NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ROGER DEE BROWNLOW,

           **Plaintiff,**

v.                                         **Case No. 6:16-cv-1985-ORL-37KRS**

COMMISSIONER OF SOCIAL
SECURITY,

           **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

       This cause came on for consideration without oral argument on the Complaint filed by

Plaintiff, Roger Dee Brownlow, seeking review of the final decision of the Commissioner of Social

Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy

of the record before the Social Security Administration ("SSA"), Doc. Nos. 12, 14, and the parties'

Joint Memorandum,[1] Doc. No. 16.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 15. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

## PROCEDURAL HISTORY.

In 2013, Brownlow filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq*.   He alleged that he became disabled on February 24, 2012.   R. 165.

After his application was denied originally and on reconsideration, Brownlow requested a hearing before an Administrative Law Judge ("ALJ").   R. 116.   On March 12, 2015, an ALJ held a hearing at which Brownlow, accompanied by a representative, and a vocational expert ("VE") testified.   R. 33-60.

After considering the hearing testimony and the evidence in the record, the ALJ found that Brownlow was insured under OASDI through March 31, 2017.   The ALJ concluded that Brownlow had not engaged in substantial gainful activity since the alleged disability onset date. R. 20.

The ALJ found that Brownlow had gout, liver disease, and mild degenerative disc disease with a slight impingement at the L5 level, which were severe impairments.   These impairments, individually and in combination, did not meet or equal a listed impairment.   *Id.*

The ALJ concluded that Brownlow had the residual functional capacity ("RFC") to perform light work, as follows:

> Specifically, he is capable of sitting and standing for eight hours each, although he must have the ability to alternate body posture every thirty minutes.   He is capable of walking for four hours in an eight-hour day.   He must avoid climbing ropes, ladders, and scaffolds, although he can occasionally climb ramps and stairs.   He can only occasionally bend, balance, stoop, squat, crouch, crawl, and kneel.   He should avoid heights and vibrations.   He has no restrictions on his upper extremities. He has no limitations to his ability to see, hear, or talk.

R. 21.   In making this assessment, the ALJ gave no significant weight to the opinion of John C. Madlener, M.D., an examining physician.   R. 23-24.

After considering the testimony of the VE, the ALJ found that Brownlow could not return to his previous work as a maintenance engineer, concrete paving laborer or hand laminator.   R. 25-26.   He concluded, however, that Brownlow could perform light, unskilled jobs available in the national economy, specifically Ticket Taker and Assembler Electronic Accessories I.   Therefore, the ALJ determined that Brownlow was not disabled.   R. 27.

Brownlow asked the Appeals Council to review the ALJ's decision.   R. 13.   On September 30, 2016, the Appeals counsel found to reason to review the ALJ's decision.   R. 1-3.

Brownlow now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Brownlow having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts relevant to the issues raised to protect Brownlow's privacy to the extent possible.

Brownlow was born in 1961, and he was 54 years old on the date of the ALJ's hearing. R. 39-40.   He completed school through the eighth grade.   R. 40.   The VE testified that Brownlow's past relevant work was maintenance engineer, a medium exertional, semi-skilled job; concrete paving laborer, a very heavy exertional, unskilled job; and hand laminator, a medium exertional, semi-skilled job.   R. 55.   Brownlow had not worked since February 24, 2012.   R. 215.

In written reports, Brownlow indicated that he had pain in his lower back, knees, ankles, feet and left shoulder and loss of grip strength in his left hand.   He had limited range of motion in his left shoulder.   He also experienced loss of balance and dizziness.   He estimated that he could walk five minutes before stopping due to shortness of breath, fatigue and pain.   R. 73.   He used the walker and a cane because he had fallen twice in 2015, which he believed was due to gout.   R. 47, 52, 73.   Sitting caused pain and stiffness in his lower back and knees and he changed positions often.   R. 73.   He did not have insurance.   R. 50.

At the ALJ's hearing, Brownlow testified that he was given a walker at a Florida hospital in 2012.   R. 47.   However, there is no prescription for a walker or a cane in the record.

Medical records show that on January 25, 2012, Brownlow sought emergency room treatment after falling and injuring his knee.   R. 328.   The treatment provider observed tenderness, swelling and erythema in Brownlow's left knee.   R. 329.   Medication was prescribed.   R. 330.

On October 10, 2012, Brownlow sought emergency room treatment for abdominal pain.   R. 265.   A CT scan revealed hepatic steatosis[2] with evidence of liver cirrhosis.   R. 267.   He was admitted to the hospital.   R. 267.   On October 12, 2012, Mark C. Gillespy, M.D., examined Brownlow for swelling in his left knee.   Upon examination, Dr. Gillespy observed moderate

---

[2] Fatty liver.   Doc. No. 16, at 4 n.1.

4

effusion with pain on range of motion.   An x-ray did not reveal arthritis.   The fluid was aspirated. R. 270-71.   The diagnosis was crystalline arthropathy.   R. 274-75.   Brownlow was released on October 23, 2012 after his delirium tremens, diarrhea and acute gout resolved.   The final diagnosis was liver cirrhosis secondary to chronic alcohol abuse.   R. 276.

On November 4, 2012, Brownlow sought emergency room treatment for pain and swelling in both legs and pain and swelling in his right knee.   R. 249.   Upon examination, the treatment provider observed swelling in both knees, left greater than right, and that both knees were very tender to palpation.   R. 251.   Brownlow was admitted to the hospital and discharged on November 8, 2012.   R. 252.   The discharge diagnoses were gout and joint pain, probably from gout arthritis. R. 252.

On November 19, 2012, Brownlow began treatment with James Brown, M.D., at Jena Medical Family Practice.   He reported liver failure, injuries to his finger, ribs, knees, and left shoulder.   He stated that he was worried about gout.   General physical examination noted that Brownlow used a walker.   Medication was adjusted. R. 313.

Brownlow sought emergency room treatment on February 1, 2013 for abdominal pain.   R. 241.   Upon examination, mild generalized tenderness was noted.   R. 243.   A CT scan revealed significant interval improvement in hepatic steatosis.   R. 247.

Dr. Madlener at AdvantaCare of Florida, LLC examined Brownlow on February 22, 2013. Brownlow reported multiple chronic pain and stated that he was having problems with bathing, grooming, dressing, standing, walking, squatting, kneeling, bending, lifting, driving, and restful sleeping.   R. 322.   Upon examination, Dr. Madlener observed that Brownlow's abdomen was slightly distended and tender to palpation.   He also observed tenderness to palpation in the thoracic

NOT FOR PUBLICATION

and lumbar spine, in the left shoulder, and in both knees and ankles.   He noted reduced range of motion in the thoracic and lumbar spine and the left shoulder.   Brownlow reported pain on extension of his knees and on flexion of his ankles.   R. 324.   Muscle strength in the upper and lower extremities was normal.   A Kemp's test for lumbar spine facet joint pain was positive bilaterally.   A Hawkins test of impingement of the shoulder was positive on the left.   A McMurray test to assess damage/tears in the medial meniscus was positive in the right knee.   R. 325.   Dr. Madlener's initial diagnoses were as follows:

> Chronic abdominal pain, from pancreatitis and cirrhosis, requiring narcotics chronically.
> Chronic low back pain, suspected facet mediated pain from degenerative changes and myofascial.
> Chronic bilateral lower limb paresthesias.
> Chronic bilateral knee pain, secondary to gout
> Chronic bilateral ankle pain, secondary to gout.
> Chronic left shoulder/thoracic pain, secondary to shoulder impingement (possible RC tear), prior fracture and myofascial.
> Chronic right digit pain, secondary to prior fracture/degenerative.
> Chronic left sided rib pain, secondary to prior fractures.
> Gait difficulties secondary to the above.
> Debility [*sic.*]secondary to the above.

R. 326.   In light of Brownlow's chronic musculoskeletal and general medical conditions, Dr. Madlener opined that Brownlow had a permanent total disability, although he recommended other treatment and imaging studies.   R. 326.

On December 14, 2013, Dr. Madlener prepared a functional capacity questionnaire.   He opined that Brownlow could sit five hours and stand/walk one hour in an eight-hour day.   He could not use his feet for repetitive movements due to ankle and knee pain.   R. 318.   He could occasionally lift/carry up to ten pounds but never eleven pounds or more.   He could occasionally balance and reach above shoulder level but never climb, stoop, kneel, crouch or crawl.   He would

have moderate restrictions being around moving machinery and driving automotive equipment and total restrictions working at unprotected heights.   R. 319.

Brownlow returned to Jena Medical on March 12, 2013.   He reported multiple pain in his finger, ribs, knees, left shoulder, "etc."   The treatment notes reflect tenderness in both knees and the mid-lower back muscles. R. 309.

On April 8, 2013, Jena Medical treatment notes reflect that Brownlow reported that he was a "bit sore" from pulling weeds the previous day.   He complained of chronic pain in his finger, ribs, knees and left shoulder.   On May 8, 2013, the medical record reflects that Brownlow had some ankle pain after having tripped on a step.   He continued to have chronic pain in his finger, ribs, knees and left shoulder, but he had good pain control.   His active medications were Ultram, Norco and Restoril.   R. 311.

On June 6, 2013, Brownlow reported to Jena Medical that he some ankle pain after tripping on a step and he continued to have chronic pain as previously reported.   He continued to report good pain control and that a muscle relaxer (Flexeril) was helping.   R. 305.

A Jena Medical treatment note reflects that, on August 1, 2013, Brownlow reported gout in his ankles at times and that he occasionally fell if off balance.   He reported good pain control.   He still used a walker.   R. 385.

On October 23, 2013, Brownlow told a treatment provider at Jena Medical that his left knee was going "out a bit."   He reported his chronic pain was better and his balance was stable.   He still used a walker.   R. 379.

Brownlow returned to Jena Medical in early 2014.   His complaints of chronic pain were the same as previously.   He had been turned down for insurance.   R. 375, 377.

On May 29, 2014, Brownlow reported to Jena Medical that he had continuing pain in his right ankle, rib, right knee, and left shoulder.   Tenderness was observed in both knees and in the mid-lower back.   R. 369.   In June, Brownlow's reports of pain were the same.   He indicated that his balance was stable, but the treatment note reflects that he still used a walker.   R. 371.

On August 8, 2014, Brownlow began treatment at Halifax Medical Center.   He complained of low back pain.   R. 362.   The treatment provider noted decreased range of motion in the knees, greater on the right than the left.   R. 364.

On October 27, 2014, Brownlow returned to Jena Medical.   He continued to complain of chronic pain despite medication.   The treatment note reflects that Brownlow used a walker. Tenderness was observed in both his knees and in his mid-lower back.   R. 367.

On January 20, 2015, Brownlow told the treatment provider at Jena Medical that he still had chronic pain in his right ankle, right knee and left shoulder.   As of February 24, 2015, he stated that Flexeril rather than Soma was working "ok."   R. 399.

On February 16, 2015, Brownlow sought emergency department treatment for low back pain after he tripped and fell in the yard.   R. 420.   Tenderness to palpation was observed over the lumbar spine, but straight-leg raising tests were negative.   The conclusion, after reviewing an x-ray of the lumbar spine, was mild degenerative disc change, mild scoliosis and degenerative joint changes involving the lower facets.   R. 422, 424.

On March 13, 2015, a treatment provider at Halifax Medical Center observed that Brownlow was using a walker but he was able to get off and on the examination table and lift his legs to help the provider assess pedal pulses.   The treatment provider also observed that Brownlow's gait was

normal and that he was able to stop when exiting the clinic to pull up his pants without any sustained

help from anyone or by use of an assistive device.   R. 409.

An MRI of the lumbar spine taken on March 26, 2015 revealed small disc herniations at L1-

2, L4-5 and L5-S1.   The herniation at L5-S1 had bilateral foraminal narrowing slightly impinging

the L5 nerve roots.   R. 425-26.

During the ALJ's hearing, the ALJ asked the VE to assume a hypothetical person with the

restrictions identified by Dr. Madlener, specifically as follows:

> He could sit for five hours, stand for one. . . . Total in an eight-hour day . . . .   For
> simple grasping, there was no restriction.   Pushing and pulling no restriction, but
> for fine manipulation on the right side, it says may have some difficulty, patient with
> digit fracture.   He cannot use his feet for repetitive foot controls.   In an eight-hour
> day he could frequently carry up to five pounds, occasionally up to ten, no amounts
> above that.   He can never climb, stoop, kneel, crouch, crawl.   He can occasionally
> balance and reach above the shoulder level.   He should never be around unprotected
> heights.   He can less than a third of the day be around moving machinery and
> driving automobiles . . . .   [F]atigue would prevent the claimant from being able to
> complete an eight-hour day and so would pain, even in a sedentary position.

R. 56.   The VE testified that this hypothetical person could not perform any of Brownlow's past

relevant work or any other work available in the national economy.   R. 56-57.

The ALJ posed a second hypothetical question based on the RFC the ALJ determined

applied to Brownlow.   R. 57-58.   The VE testified that this hypothetical person could perform the

jobs of Ticket Taker, a light exertion, unskilled job, and Assembler, Electrical Accessories I, a light

exertion, unskilled job, both of which were available in the national economy.   R. 58.   The VE

testified that based on his experience, the hypothetical person could perform these jobs with a

sit/stand option.   R. 58-59.   The VE testified that if the hypothetical individual needed a cane to

stand, the individual could not perform either of these jobs.   R. 59.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Brownlow raises two assignments of error.  He argues that the ALJ erred by failing to find that he needed to use an assistive device, such as a cane or a walker.   He also contends that the ALJ erred by giving no significant weight to Dr. Madlener's opinion.   He requests that the Court reverse the final decision of the Commissioner and remand the case for further proceedings.   These are the only issues I will address.

*Need for an Assistive Device.*

The ALJ rejected Brownlow's testimony that he needed a walker because an assistive device had never been prescribed or deemed medically necessary and because substantial evidence in the record did not support a need for an assistive device.  R. 23.  Brownlow contends that these findings are erroneous.

Merely using a hand-held assistive device does not establish a medical need for that device. *Hitchins v. Comm'r of Soc. Sec.*, No. 2:15-cv-797-FtM-MRM, 2017 WL 490539, at * 4 (Feb. 7, 2017).   Rather, SSR 96-9P provides as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9P, 1996 WL 374185, at *7.

Counsel for Brownlow does not cite to any evidence in the record that an assistive device was prescribed or that any treatment provider found use of an assistive device to be medically

10

necessary.   There is also no medical opinion about the circumstances for which a walker or cane is needed.   Finally, the ALJ found that Brownlow's testimony was not entirely credible, R. 22, which finding Brownlow does not challenge in the Joint Memorandum.   Under these circumstances, Brownlow's testimony alone is insufficient to establish that he required use of an assistive device.

For these reasons, the first assignment of error is unavailing.

*Weight Given to the Opinion of Dr. Madlener.*

Brownlow contends that the ALJ erred by not giving significant weight to Dr. Madlener's functional capacity assessment.   He argues that the ALJ is required to consider Dr. Madlener's opinion that he was totally disabled and that the ALJ failed to consider all of Dr. Madlener's findings on examination.

Dr. Madlener was a one-time examining physician.   "A consultative examination, that is, a one-time examination by a physician who is not a treating physician, need not be given deference by the Commissioner."   *Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1318 (N.D. Fla. 2008) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

The ALJ's decision reflects that he was aware that a physician's opinion that an individual is disabled "'must not be disregarded.'"   R. 23-24 (quoting SSR 96-5p).   The ALJ further correctly stated that even when a treating source opines that an individual is disabled, that opinion "'can never be entitled to controlling weight or given special significance.'"   *Id.*   This establishes that the ALJ did not ignore Dr. Madlener's opinion that Brownlow was disabled.

Additionally, the ALJ cited two reasons to support his conclusion that the record as a whole does not support Dr. Madlener's restrictive functional capacity assessment.   First, the ALJ noted

that treatment records were routinely unremarkable upon testing.   There are, however, treatment records record reflecting that Brownlow had problems with his knees due to gout.   The records reflect that these problems generally resolved after medication.   A McMurray test was positive for a damage/tear to the medial meniscus in his right knee, but there is no follow-up to that finding showing the degree of damage to the medial meniscus.   Additionally, the treatment notes from Jena Medical reflect that Brownlow reported good pain control and that muscle relaxer medication was helping him.   Therefore, while the ALJ's summary of the test results is not entirely accurate, there is evidence in the record supporting a finding that the treatment records do not establish the degree of functional limitations identified by Dr. Madlener.

Second, the ALJ correctly stated that a treatment provider at Halifax Medical Center noted that Brownlow had a normal gait, he could get on an off an examining table, lift his legs for assessment of pedal reflexes, and stop while exiting the clinic to pull up his pants without substantial assistance or use of an assistive device.   These reasons are supported by substantial evidence in the record and provide further support for the ALJ's conclusion that Brownlow's functional capacity was not as limited as Dr. Madlener assessed it to be.

For these reasons, the second assignment of error is not meritorious.

## RECOMMENDATION.

For the reasons stated above, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**.   I further **RECOMMEND** that the Court direct

NOT FOR PUBLICATION

the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**RESPECTFULLY RECOMMENDED** this 31st day of January 2018.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE